## Farmer Motor Co., Inc., v. Smith et al.

(Decided Feb. 27, 1934.)

BLAKEY, DAVIS & LEWIS for appellant.

DAVID C. HUNTER and I. JAY MILLER for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This is the second appeal of this case. See Farmer Motor Company, Incorporated, v. Burt W. Smith et al., 249 Ky. 445, 60 S. W. (2d) 929.

In our former opinion the conclusion was reached that the Workmen's Compensation Board should have stated in its finding of facts not only that the employee's disability was the combined result of his act in knocking the top off of a boil and his subsequent act in squeezing it, but also should have stated whether his disability was or was not contributed to in any degree by any pre-existing disease. The case was remanded to the board to apportion its award according to the natural and direct result of the traumatic injury for which the applicant sought adjusted compensation and the result of a pre-existing disease which the board's finding of facts indicated existed at the time of his injury. On the remand to the board, it made a second finding of facts and apportioned the award according to the direction in our former opinion.

The Farmer Motor Company is here again earnestly and diligently urging there is a total failure of competent evidence to sustain the finding of the board.

It has been uniformly held by this court that, "unless there is an entire absence of substantial and credible evidence to support the board's finding of facts, this court, in the absence of fraud, cannot disturb it." Employers' Liability Assurance Corp. v. Gardner et al., 204 Ky. 216, 263 S. W. 743, 744; Hazard Blue Grass Coal Corp. v. Scott, 206 Ky. 759, 268 S. W. 548; Pet

Milk Co. v. Workmen's Compensation Board, 226 Ky. 16, 10 S. W. (2d) 455. Evidence in such cases, as in every case, means something of substance and relative consequence. Harlan Wallins Coal Corp. et al. v. Carr, 220 Ky. 785, 295 S. W. 1017. Medical testimony is within this category. Utilities Coal Corp. et al. v. Brock et al., 225 Ky. 223, 7 S. W. (2d) 1037.

In our former opinion the facts were recited thus: "On and prior to August 1, 1931, the appellee, Burt W. Smith, was employed by appellant, Farmer Motor Company, as a mechanic in its garage in Lexington, Ky. On August 1, 1931, while engaged in the work he was employed to do, he struck a boil, which he had on his right forearm, against the fender of an automobile, thereby knocking the top off the boil, and blood and pus emitted from the boil, and appellee then squeezed the boil in an effort to rid it of the rest of the pus. A bandage was applied to his arm by his foreman, and appellee continued work, thinking it was a minor injury. He kept the bandage on his arm two or three days and removed it. The boil continued to improve, and in a few days was healed up, leaving only a scar. On August 25, 1931, about three weeks after the injury to the boil, appellee was working on an automobile in appellant's garage. He was inside the car when the floor board of the car which had been laid in place, but insecurely fastened, slipped, and appellee's right leg and hip fell through the car into the parts below the floor boards. He felt some pain in his hip, but continued to work that day. The next day he reported for work, but the pain in his hip became so severe he quit and went home. He stayed at home about one week, and, his condition not improving, he called a doctor. He was sent to the hospital, where an examination disclosed that he was suffering from a blood stream infection which had settled in his right hip which was injured in the fall through the car as above stated. Abscesses developed around the right hip joint, and eventually osteomyelitis, which destroyed the head and neck of the right femur. He stayed in the hospital about five months, and, when discharged, he had certain deformities of the hip and leg, and which totally, and probably permanently, crippled and disabled him."

Dr. Charles C. Garr attended Smith and administered treatment for the injury he claims he sustained. Other doctors examined him in Dr. Garr's presence. Dr. Garr performed two operations on Smith's right hip. Smith claims his hip was strapped and the incision had not healed, being dressed once a day by the nurse, at the time he gave his deposition. He describes the injuries sustained, the appearance of the boil, and the knocking the top off it. He claims that previously he had only had boils on his arms and hands where he would get grease "under the skin." Dr. Garr describes the history of the case as it was given him by Smith and the treatment administered. It was his conclusion that Smith had "an infection in and around his hip joint"; "pus around his right hip." To drain the hip, he made a small incision at the point where the pus was located, inserting a drainage tube, "took a culture of the pus," and the test showed a germ called "streptococcus hemolyticus," a very destructive microbe. He gave it as his opinion that any injury, such as a bruise, or a squeeze, "or anything, any injury to a boil that can injure the protecting base at the bottom of a boil will most likely produce septicemia"; anything that breaks the protecting wall would permit a small infected piece of material from the boil to get into the vein, causing a blood stream infection to follow. It was also his opinion that from the first accident, related by Smith as a part of the history of the case, when Smith struck the boil, the germ described by him got into the blood vein and was responsible for the infection. It was his opinion Smith was totally disabled at the time of the giving of his testimony. It was the opinion of Dr. Garr that a traumatic injury to any part of the human body, though minor in character, while the blood veins are infected with the germ he described, plays an important role in the presence of the blood stream infection; "that any condition that lowers the local resistance of a part, makes that part more liable for the germs that are floating free in the blood stream to attack he point of least resistance"; "and if the blood stream is infected with this germ and any ordinary injury occurs, the osteomyelitis" will develop in two or three days, "sometimes right away." Dr. Garr attributed "the present disability" of Smith "to the fact that from the boil injury he sustained a blood stream infection and then having an injury later to his hip, he had osteomyelitis to de-

velop and that is what had done the damage''; but the medical fraternity has no way of absolutely knowing where the infection enters the blood stream in such cases. It can only search for the points of entrance and assume that the visible point is the one that permitted it—was the focus that produced the blood stream infection; and the physicians have no test by which they can be certain, ''and only from experience in other cases,'' where they have the history of an open wound or a boil or a wound that contains pus, do they diagnose the case. And where there is a boil or a wound that contains pus, they naturally assume that that was the cause of the blood stream infection of the patient. It was his view that putting the two together, that the present condition of Smith was ''due to both injuries,'' sustained by Smith. Dr. J. A. Stoeckinger examined Smith's teeth and tonsils and tried to find out about sinus infection, whether he had cold recently or often. He examined him for other sources without knowing on his first visit about the boil. It was his opinion on his first visit there was quiescent infection absorbed from some focus and it had localized to his hip joint and caused acute arthritis and osteomyelitis. Later he discovered Smith had had the boil and when it was sore had scraped it on a fender of an automobile. And from his viewpoint, if he had not knocked the top of it off, let it alone, and not injured it, that ninety-nine times out of a hundred the boil would have subsided and gotten well, without any metastasis elsewhere. He gave it as his opinion based on examination and the history of the case, that Smith had had a boil and an injury and that was the most logical source of the infection gaining entrance into his body. It was his opinion ''that had he not struck the boil, injured and knocked the top of it off, broken the barriers of the protection, that there would not be a metastasis of this infection in the general blood stream settling in the hip joint.'' Physicians testified in behalf of the Farmer Motor Company and gave it as their opinion ''the boil was the primary cause'' of Smith's present condition; he could have had the blood stream infection from the boil had it not been disturbed; there was no way for physicians to determine whether a blood stream infection would have resulted from the boil even if it had not been bruised or squeezed.

Without detailing their evidence, it is sufficient to

say that it diametrically contradicts the physician testifying in behalf of Smith. The plenitude of the evidence was sufficient to justify the finding of the board, notwithstanding contradictions. Viewing it in this light with the familiar principles controlling the courts in this character of case, we are driven to the conclusion the finding of the board is sustained by adequate and competent evidence.

Judgment is affirmed.